H. Joseph Acosta
SBN 24006731
**DORSEY & WHITNEY, LLP**
200 Crescent Court, Suite 1600
Dallas, Texas 75201
Tel: 214-981-9970
Fax: 214-853-5887

**PROPOSED ATTORNEYS FOR DEBTOR AND
DEBTOR IN POSSESSION**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 24-40747-11** |
| **ROBERT WYATT CONTRACTING, LLC,**[1] | § | |
| | § | **CHAPTER 11 CASE** |
| | § | |
| Debtor. | § | |
| | § | |

### MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING PAYMENT OF (I) CERTAIN PREPETITION WORKFORCE CLAIMS, INCLUDING OTHER COMPENSATION, (II) CERTAIN EMPLOYEE BENEFITS, (III) REIMBURSEMENT TO EMPLOYEES FOR PREPETITION EXPENSES, (IV) WITHHOLDING AND PAYROLL RELATED TAXES AND (V) WORKER'S COMPENSATION OBLIGATIONS

The above-captioned debtor and debtor in possession (the "**Debtor**") hereby move this

Court (the "**Motion**") for entry of an interim attached hereto  as   Exhibit A (the "**Interim**

**Order**"), pursuant to sections 105(a), 363(b), 507, 1107(a), and 1108 of title 11 of the United

States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"); authorizing, but not directing, the Debtor to

(i) pay benefits and other compensation to their Workforce (as defined below); (ii) reimburse

Employees (as defined below) for prepetition expenses that Employees incurred on behalf of the

---

[1]  The Debtor's federal identification number is:  82-1413471.

Debtor in the ordinary course of business on a prepetition basis; (iv) pay all related prepetition payroll taxes and other deductions. In support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtor consents to entry of a final order under Article III of the United States Constitution.

2.      Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), and 507, and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

**A.      General Background**

4.      The Debtor is a Texas limited liability company formed in 2017.  The Debtor's President, founder and sole shareholder is Robert Pfeil.  The Debtor is an -established excavation contractor specializing in earthwork, clearing, wet utilities and paving in the North Texas area. Its services include land-clearing, clearing wooded areas before any construction, digging ponds, importing/exporting materials and construction building pads, and providing demolition services for both residential and commercial buildings.

5.      The Debtor employs eight full-time employees and one independent contractor, who serves as the Chief Financial Officer.  Historically, the Debtor was headquartered at the Texas Motor Speedway, located at 3575 Lone Star Circle, Suite 201, Fort Worth, TX 76177.

6.      The Debtor started having financial trouble in 2022, when it had grown exponentially from a single employee in 2017 to four employees in 2020 to over 80 employees in

2022.  Revenues expanded from mid-$200,000 in 2020, to approximately $2 million in 2021, to revenues exceeding $10 million in 2022. But, as revenues expanded, so did the Debtor's working capital and debt obligations.  The Debtor soon was not able to generate enough profit to meet its working capital needs and debt servicing obligations.  While the Debtor significantly cut its workforce and other operating expenses and negotiated with many of its creditors, the Debtor still has not been able to meet all of its obligations, resulting in numerous creditors threatening legal action and other remedies, including repossessions.  These circumstances necessitate this bankruptcy filing.

7.      On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manages its property as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no committees have been appointed or designated.

**B.      The Debtor's Workface and Related Obligations**

9.      In connection with the operation of its business, the Debtor currently employ approximately: 2 salaried and 6 hourly employees, and 1 independent contract employee (the "**Employees**").

10.     The Employees are critical to the Debtor's business, and their value cannot be overstated. To a significant extent, the long-term viability depends on the Debtor's ability to attract and retain qualified personnel. The loss of certain Employees will impede the Debtor's business and seriously harm the ability to successfully implement its bankruptcy strategy. Further, replacing Employees can be difficult for the Debtor given the limited number of

individuals in its industry with the breadth of skills and experience required to successfully navigate the excavation space, where experience is at its premium.

11.    If the Debtor cannot assure its Employees that they will promptly pay prepetition Employee Obligations (as defined below) to the extent allowed under the Bankruptcy Code, and continue to honor, as applicable, the Employee Benefits Obligations (as defined below), certain Employees will likely seek employment elsewhere. The loss of Employees at this critical juncture would have a material adverse impact on the Debtor's business and ability to maximize value through this Chapter 11 Case.

12.    In the ordinary course of business, the Debtor incur payroll and other compensation obligations for their Workforce. The Debtor also provides other benefits to their Employees for the performance of services. These benefits and obligations are described in more detail below.

**(i)        Workforce Compensation Obligations**

**(a)        Employee Compensation Obligations**

13.    In the ordinary course of business, the Debtor incurs payroll obligations to its Employees, comprised generally of salaries and wages. The Debtor utilizes one payroll cycle where Employees are paid on a weekly basis. All employees are paid one week in arrears on each Friday of the month.  The Debtor's average payroll obligation per cycle is approximately $13,580.00 (the "**Employee Compensation Obligations**"), with no employee earning over $2,500 per cycle and with the sole insider not being the highest paid employee. The last payroll date was on the Petition Date.  Prior to the Petition Date, the Debtor paid all Employee Compensation Obligations through the Petition Date; thus the Debtor is not seeking permission to pay any accrued Employee Compensation Obligations.

**(b)**        **Administrative Fee Obligations**

14.      The Debtor uses Quickbooks Payroll (QB) to process their payroll and coordinate the payment of Withholding Obligations (as defined below). Furthermore, QB plays a crucial role for the Debtor, effectively providing the Debtor with a comprehensive HR back-office system, including the management of all Employee data, payroll processing, recruiting services, tax filings, time and attendance services, self-service benefits administration, and a review and compensation module.

15.      The ongoing services of QB are imperative to the smooth functioning of the Debtor's operations and payroll system. On average, the Debtor pays QB approximately $250.00 per month. As of the Petition Date, the Debtor estimates that its owes QB approximately $250.00 in outstanding fees in connection with ADP's services.

16.      The Debtor seeks authorization, but not direction, to pay all unpaid administrative fee obligations due to QB (the "**Administrative Fee Obligations**") and to continue paying the Administrative Fee Obligations postpetition in the ordinary course of business. In addition, the Debtor seeks authority to cause any prepetition checks or electronic payment requests that were given in payment of Administrative Fee Obligations to be honored and to reissue any check or electronic payment request that is not cleared by the applicable bank or other financial institution, to the extent necessary.

**(c)**        **Withholding Obligations**

17.      For each applicable pay period, the Debtor routinely deducts certain amounts directly from Employees' paychecks, including, without limitation, pre- and after-tax deductions payable pursuant to certain of the Employees' benefit plans programs, policies and arrangements, including, but not limited to, those discussed herein, including an Employee's share of health

care benefits, insurance premiums, and 401(k) contributions, legally-ordered deductions, and other miscellaneous deductions (collectively, the **"Deductions"**). The Debtor withholds approximately $3,800.00 per month in the aggregate from Employees' wages on account of Deductions, which the Debtor remits to the appropriate third-party recipients and/or retain on account of "self-insured" benefit and insured benefit programs as further described below.

18.     In connection with the salaries and wages paid to Employees, the Debtor is required by law to withhold amounts related to federal, state, and local income taxes, as well as social security and Medicare taxes from Employees' wages (collectively, the **"Employee Withholding Taxes"**) and to remit the same to the applicable taxing authorities. In addition, the Debtor is required to make matching payments from their own funds for, among other things, social security and Medicare taxes and to pay, based on a percentage of gross payroll, state, and federal unemployment insurance, employment training taxes, and state disability insurance contributions (the "**Employer Payroll Tax Obligations**," and together with Employee Withholding Taxes, the "**Payroll Tax Obligations**"). Each pay cycle, the Debtor withholds any applicable Employee Withholding Taxes from the Employees' wages, and ADP remits the same to the applicable taxing authorities. The Debtor withheld approximately $15,000.00 in February 2024 Employee Withholding Taxes, and the Debtor's February 2024 monthly payment for Employer Payroll Tax Obligations was approximately $22,500.00. The amounts in satisfaction of the Payroll Tax Obligations are paid directly to the taxing authorities on the due dates. For federal withholdings and taxes, the due date is 3 business days following the payroll date. For federal and state unemployment taxes, the due date is the last day of the month following a quarter end.

19.     The Debtor seeks authorization, but not direction, to continue to make the

Deductions and satisfy the Payroll Tax Obligations   (collectively, the "**Withholding Obligations**") and to remit amounts withheld on behalf of third parties postpetition in the ordinary course of business.

(ii)      <b>Incentive Programs</b>

20.      In In the ordinary course of business, the Debtor have typically maintained performance-based incentive and bonus programs for certain categories of Employees (collectively, the "**Incentive Program(s)**"). The Incentive Programs are based on the level of productivity and revenues generated per project. All Employees are eligible to receive compensation under the Incentive Programs. As of the Petition Date, the Debtor estimates that it owes $750.00 on account of the Incentive Programs available to eligible Employees.

21.      For those Employees who receive them, bonuses earned under the Incentive Programs are an important aspect of their overall compensation. Maintaining historical prepetition practices with regard to the Incentive Programs is essential to ensuring that the Debtor can retain its Employees and continue to operate its business and maximize value through the duration of this Chapter 11 Case. Therefore, the Debtor seeks authority, but not direction, to honor its obligations under the Incentive Programs and to maintain the Incentive Programs in the ordinary course of the Debtor's business.

(iii)      <b>PTO, Holiday Pay, Sick Leave and Paid Vacation</b>

22.      The Debtor offers its Employees paid time off ("**PTO**"), holiday pay ("**Holiday Pay**"), and paid sick days ("**Sick Leave**"). None of the Employees receives such benefits if he or she leaves employment with the Debtor.   These programs are typical and customary, and continuing to offer them is necessary for the Debtor to retain Employees during the reorganization process. The Debtor estimates that the accrued value of these benefits, as of the

Petition Date, is zero.

23.     The Debtor also offers its Employees paid compensation for certain days such Employee uses on a vacation from work ("**Paid Vacation**"), based on the length of employment with the Debtor.  None of the Employees receives such benefits if he or she leaves employment with the Debtor.  The Debtor estimates that value of the accrued Paid Vacation, as of the Petition Date, for six non-insider Employees is $15,285.25.

24.     The Debtor requests that it be authorized, but not directed, to continue to honor their PTO, Holiday Pay, Sick Leave and Paid Vacation policies going forward, including during the administration of this Chapter 11 Case. The Debtor also requests authority to pay any PTO, Holiday Pay, Sick Leave and Paid that accrued prepetition.

**(iv)     Reimbursable Expense Obligations**

25.     Prior to the Petition Date, in the ordinary course of business, the Debtor reimbursed Employees for reasonable and legitimate expenses incurred on behalf of the Debtor in the scope of the Employee's employment ("**Reimbursable Expense Obligations**"). Reimbursable Expense Obligations typically include expenses for, among other things, travel, meals, parking, mileage, utilities and certain other business and travel related expenses. All such expenses are incurred with the applicable Employee's understanding that he or she will be reimbursed by the Debtor in accordance with the Debtor's reimbursement policy, as described in more detail below. In all cases, reimbursement is contingent on the Debtor's determination that the charges are for legitimate, reimbursable business expenses.

26.     The Debtor processes expense and reimbursement claims on a rolling basis. As such, it is difficult for the Debtor to determine the exact amount of Reimbursable Expense Obligations outstanding as of the Petition Date because, among other things, Employees may

have expenses that they have yet to submit to the Debtor for reimbursement. On average, over the past year, the Debtor has paid approximately $3,000.00 per month on account of Reimbursable Expense Obligations. As of the Petition Date, the Debtor believes that less than $5,000.00 in Reimbursable Expense obligations are outstanding as of the Petition. To the extent that any Reimbursable Expense Obligations are outstanding, the Debtor requests the authority to reimburse such Employees.

27.     The Reimbursable Expense Obligations are ordinary course expenses that the Debtor's Employees incur in performing their job functions. It is essential to the continued operation of the Debtor's business that the Debtor be permitted to continue reimbursing, or making direct payments on behalf of, Employees for such expenses.

28.     Employees incurred the Reimbursable Expense Obligations as business expenses on the Debtor's behalf and with the understanding that they would be reimbursed. To avoid harming Employees who incurred the Reimbursable Expense Obligations, the Debtor requests authority, but not direction, to satisfy all prepetition Reimbursable Expense Obligations to the extent Employees have paid for such expenses directly from their own funds or are otherwise personally liable for such expenses. The Debtor also seeks authority to continue its reimbursement policy in the ordinary course of business during the administration of this Chapter 11 Case.

### (v)     Employee Benefit Programs

29.     In the ordinary course of business, the Debtor implements various benefit plans and policies for their Employees that can be divided into the following categories, all as are described in more detail below: (a) medical, health care and prescription benefits, including, but limited to, telephone health consultation, supplemental medical expense insurance coverage,

health flexible spending accounts, health reimbursement arrangements and employee and dependent preventive care benefit plan (the "**Medical Plans**"), COBRA coverage ("**COBRA**"), dental care (the "**Dental Plan**"), and vision care (the "**Vision Plan**," and collectively, with the Medical Plans, COBRA, and the Dental Plan, the "**Health Plans**"); (b) retirement savings 401(k) plan (the "**401(k) Plan**"); (c) the  mobile device program (the "**Phone Plan**"); and (d) the severance program ("**Severance Program**" and collectively with the Health Plans, the 401(k) Plan, Phone Plan, and Severance Program, the "**Employee Benefits Plans**"). In certain instances, the Debtor deducts specified amounts from the participating Employees' wages in connection with the Employee Benefits Plans. All obligations with respect to the Employee Benefits Plans are hereinafter referred to as the "**Employee Benefits Obligations**."

> (a)     **Health Plans**

30.     Employee contributions to the Health Plans have been and are collected through payroll deductions from participating Employees. The Debtor believes that it is necessary and appropriate to continue to honor their obligations to current and former Employees under the Health Plans. The Debtor requests authority, but not direction, to pay all prepetition amounts due under the Health Plans. The Debtor also requests authority, but not direction, to continue to offer the Health Plans and honor its obligations thereunder in the ordinary course of business during the administration of this Chapter 11 Case.

31.     <u>Medical Plans</u>. The Debtor offer Employees and eligible dependents compressive medical coverage through a plan with Blue Cross/Blue Shield ("**BCBS**"). Prescription drug coverage is offered through BCBS. Approximately 7 Employees are enrolled in Medical Plans with BCBS. The Debtor pays 70% of approximately $5,100.00 per month in connection with the Medical Plans. The Debtor is charged on the first day of each month for this coverage through

Health Benefits Trust ("**HBT**").  There may be a nominal amount owed on this benefit.

32.      COBRA. The Debtor maintains an account with HRO to provide health insurance benefits under the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**") to certain Employees who have been terminated from coverage and participated in one of the other Health Plans prior to such termination. There are typically 84 former employees who participate in COBRA insurance at any given time. The Debtor does not pay for the COBRA insurance premium for these former employees; rather, such costs are paid by the former employees, plus an additional administrative and/or other related fees and costs for such COBRA coverage. The Debtor does not owe any administrative fees to HRO in connection with the COBRA insurance program. The Debtor seeks authority to continue the COBRA insurance program.

33.      Dental Plan. The Debtor off its Employees dental insurance administered through Ameritas Life (the "**Dental Plan**"). Approximately 7 Employees are enrolled  in  the Dental Plan. The Debtor pays approximately $320.00 per month in connection with the Dental Plan. As of the Petition Date, the Debtor estimates that it owes approximately $0.00 in connection with the Dental Plan.

**(b)      401(k) Plan**

34.      The Debtor maintains a 401(k) Plan, which is a retirement savings plan for eligible Employees pursuant to section 401 of the Internal Revenue Code. The 401(k) Plan is offered through Fidelity Investments. Approximately three individuals, comprised of both Employees and former Employees, currently participate in the 401(k) Plan. The Debtor normally withholds a certain amount of the participating Employee's wages that such Employee elected to contribute to his or her 401(k) Plan account (the "**Employee Contributions**").  However, prior to the Petition Date, the Debtor inadvertently failed to remit approximately $9,792.94 in

Employee Contributions to the 401(k) Plan.

35.     The Debtor also has a policy of matching Employee Contributions to the 401(k) Plan (the "**Matching Contributions**"). However, prior to the Petition Date, the Debtor failed to make approximately $8,516.35 in Matching Contributions.

36.     The monthly administrative fee in connection with the 401(k) Plan is paid from fees assessed against plan participants. To the extent that assessed fees are insufficient to cover administrative expenses in connection with the 401(k) Plan, the Debtor may be liable for such expenses (the "**Retirement Administrative Fees**"). As of the Petition Date, the Debtor estimates that it owes approximately $900.00 in Retirement Administrative Fees in connection with the 401(k) Plan.

37.     Accordingly, the Debtor requests authority to pay the missed Employee Contributions, Matching Contributions and Retirement Administrative Fees in connection with maintaining the 401(k) Plan. The Debtor also requests authority, but not direction, to continue to offer the 401(k) Plan, and its policies in connection therewith, in the ordinary course of business during the administration of this Chapter 11 Case.

**(c)            Severance Program**

38.     The Debtor maintain a Severance Program to which severed employees may continue to receive pay. Severance pay is accrued based upon length of service.

39.     As of the Petition Date, the Debtor does not make payments pursuant to the Severance Program.

40.     The Debtor seeks authority, but not direction, to continue to make payments under the Severance Program in the ordinary course of business.

(vi)     **Workers' Compensation Program**

41.     The Debtor maintains workers' compensation insurance for its Workforce at the statutorily required level by the State of Texas. The Debtor maintains workers' compensation coverage ("**Workers' Compensation Insurance**") for claims ("**Workers' Compensation Claims**") through Texas Mutual Insurance (the "**Workers' Compensation Insurers**"). The Debtor pays approximately $3,500.00 in monthly premiums and fees to maintain the Workers' Compensation Insurance. As of the Petition Date, there are approximately 1 active Workers' Compensation Claims.

42.     The Debtor seeks authority, but not direction, to pay any Workers' Compensation Claims in the ordinary course and honor payments owed with respect to the Workers' Compensation Claims regardless of when such obligations arose.

## RELIEF REQUESTED

43.     By this Motion, the Debtor requests entry of the Interim Order, substantially in the forms of Exhibit A, respectively, attached hereto, authorizing, but not directing, the Debtor to (a) pay prepetition claims and honor obligations incurred or related to the Withholding Obligations, the Incentive Programs, PTO, Sick Leave, Holiday Pay, the Reimbursable Expense Obligations, Employee Benefits Obligations, Workers' Compensation Claims, and all fees and costs incident to the foregoing, including amounts owed to third-party administrators (including the Administrative Fee Obligations) (collectively, the "**Employee Obligations**"), and (b) maintain, continue, and honor, in the ordinary course of business, the Incentive Programs, PTO, Sick Leave, and Holiday Pay policies, postpetition Reimbursable Expense Obligations, the Employee Benefits Plans, the 401(k) Plan and the Workers' Compensation Claims (collectively, the "**Employee Plans and Programs**").

---

44.     To enable the Debtor to implement the relief requested, the Debtor also request that the Court authorize all applicable banks and financial institutions (collectively, the "**Banks**"), ADP (together with the Banks, the "**Processors**"), to receive, process, honor, and pay all checks presented for payment and all electronic payment requests made by the Debtor relating to the Employee Obligations and the Employee Plans and Programs, whether such checks were presented or electronic-payment requests were submitted prior to or after the Petition Date.

## BASIS FOR RELIEF

45.     The Debtor's ability to successfully operate is contingent on a reliable and loyal Workforce. As stated above, competition for qualified employees is intense in the Debtor's industry. Thus, it is essential to assure the Employees that the Debtor will honor the Employee Obligations and continue and maintain the Employee Plans and Programs in the ordinary course of business throughout this Chapter 11 Case. A failure to promptly do so will create concern and discontent among the Employees and could lead to resignations or the decision to not complete work for the Debtor or accept future work projects. The loss of even a few key personnel would immediately and irreparably harm the Debtor's ability to maintain operations to the detriment of all interested parties.

46.     Therefore, pursuant to Bankruptcy Code sections 105(a), 363, 507, 1107(a), and 1108, the Debtor seeks authority to pay the Employee Obligations and to maintain and continue the Employee Plans and Programs and in the ordinary course of business, in the exercise of its business judgment. This relief is necessary to retain the Workforce, the loss of which would disable the Debtor's business operations.

**A.      A Significant Portion of the Employee Obligations Is Entitled to Priority Treatment**

47.     Bankruptcy Code section 507(a)(4)(A) grants priority status to up to $15,150.00

for employee claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date. *See* 11 U.S.C. § 507(a)(4)(A). Similarly, Bankruptcy Code section 507(a)(5) grants priority to contributions to employee benefit plans, up to an aggregate amount of $15,150.00 multiplied by the number of employees covered, less any amounts paid to such employees under Bankruptcy Code section 507(a)(4).

48.     Indeed, "[w]age priority has been a feature of the bankruptcy law since 1898." *In re Garden Ridge Corp.*, No. 04-10324 (KJC), 2006 WL 521914, at *2 (Bankr. D. Del. Mar. 2, 2006) (citing 4 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 507.05[1] (15th ed. 2005)). Its purpose is to "alleviate hardship on workers . . . who may have no other source of income and "to encourage employees to stand by an employer in financial difficulty." *Id.* (citing Collier on Bankruptcy ¶ 507.05[1]). This priority extends to certain other "benefits that are considered akin to compensation, such as vacation, severance and sick leave pay." *Id.*

49.     The Debtor believes that a substantial portion of the Employee Obligations relating to the period prior to the Petition Date constitutes priority claims under Bankruptcy Code sections 507(a)(4) and (5). Amounts that are paid on account of priority claims for the majority of the Employee Obligations would not otherwise be available for distribution to unsecured creditors. Therefore, the Debtor's unsecured creditors will not be prejudiced by permitting priority obligations to be satisfied in the ordinary course of business during this Chapter 11 Case rather than at the conclusion of the Chapter 11 Case. Indeed, the Debtor submits that payment of Employee Obligations at this time enhances value for the benefit of the Debtor and all interested parties by retaining the Workforce. The Debtor believe that honoring the Employee Obligations is important to sustain morale for the current Workforce and ensure its retention.

**B.**        <u>**Payment is Appropriate Under Bankruptcy Code Sections 1107 and 1108**</u>

50.        The Debtor, operating its business as a debtor in possession under Bankruptcy Code sections 1107(a) and 1108, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). "Implicit in the duties" of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id. See also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003); *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004).

51.        Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *In re CoServ, LLC*, 273 B.R. at 497. The *CoServ* Court specifically noted that preplan satisfaction of prepetition claims is a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim is a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

52.        Payment of the Employee Obligations as set forth herein meets each element of the *CoServ* Court's standard. The Debtor's operations rely on the skill and expertise of its

---

Employees. The Employees possess unique knowledge regarding specific aspects of the Debtor's operations, which would be virtually irreplaceable should such Employees be lost through a failure to pay the Employee Obligations. In addition, any failure by the Debtor to pay the Employee Obligations as set forth herein would negatively impact the morale of the Workforce at a critical time for the Debtor and its business when the Workforce is most needed. The Workforce is also critical to the Debtor's ability to maintain its operations consistent with past practices, which would be impossible without the continued efforts of the Workforce. The damage to the value of the Debtor's business and, hence, the costs to creditors as a whole, would be immediate and irreparable if the Employee Obligations were not met. In short, the potential harm and economic disadvantage that would stem from the failure to pay the Employee Obligations as set forth herein greatly outweighs the amount of any prepetition claims that the Debtor is seeking authorization to pay.

53.     After careful consideration in consultation with its advisors, the Debtor has determined in its business judgment that to avoid significant disruption to its business there exists no practical or legal alternative to the payment of the Employee Obligations as set forth herein. Therefore, the Debtor can meet its fiduciary duty as a debtor in possession under Bankruptcy Code sections 1107(a) and 1108 only by payment of the Employee Obligations as set forth herein.

## C.     <u>Payment is Appropriate Under Bankruptcy Code Section 541</u>

54.     The Debtor also seeks authority to pay the Withholding Obligations to the appropriate entities. These amounts principally represent the Employees' earnings that governments, the Employees, and the judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain Withholding Obligations are not property of the Debtor's

estate because the Debtor has withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541. *See also City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 95 (3d Cir. 1994) (observing the "well-settled principle that debtors do 'not own an equitable interest in property . . . [they] hold[] in trust for another,' and that therefore funds held in trust are not 'property of the estate'") (quoting *Begier v. IRS*, 496 U.S. 53, 59 (1990)).

55.     Further, federal and state laws require the Debtor to withhold certain tax payments from Employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a). S*ee also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *In re Sharon Steel Corp.*, 41 F.3d at 95-97 (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). A failure to pay over these amounts could subject the Debtor and its officers and directors to liability. *See, e.g.*, John F. Olson, et al., Director & Officer Liability: Indemnification and Insurance § 3:21 (2003).

56.     To avoid the potential of such liability, and because the Withholding Obligations are not property of the Debtor's estate, the Debtor requests that the Court authorize them to remit these amounts to the appropriate parties in the ordinary course of business.

**D.     Payment is Appropriate Under Bankruptcy Code Section 363**

57.     Bankruptcy Code section 363(b)(1) provides that a debtor may "after notice and a

hearing, use, sell, or lease, other than in the ordinary course of business, property of the estate."

11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary course

of business must be based upon the sound business judgment of that debtor. *See Official Comm.*

*of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Co. (In re Chateaugay Corp.)*, 973

F.2d 141, 143 (2d Cir. 1992) (holding that a court determining an application pursuant to section

363(b) must find from the evidence a good business reason to grant such application). *See also In*

*re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (standard for determining

a section 363(b) motion is whether the debtor has a "good business reason" for the requested

relief). "Where the debtor articulates a reasonable basis for its business decisions (as distinct

from a decision made arbitrarily or capriciously), courts will generally not entertain objections to

the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville*

*Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Consistent with a

debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition

obligations, and where the debtor is able to "articulate some business justification, other than the

mere appeasement of major creditors," courts have authorized debtors to make such payments

under Bankruptcy Code section 363(b). *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 175

(accepting debtor's argument that payment of employee wage claims was "critical . . . in order to

preserve and protect its business and ultimately reorganize, retain its currently working

employees and maintain positive employee morale," and finding that the debtor had "clearly

demonstrated sound business reasons to justify such payments").

58.     In addition, the Debtor pays the Employee Obligations in the ordinary course of

business, as permitted by Bankruptcy Code section 363(c). However, to the extent the Court

finds that approval is necessary, and in an abundance of caution, the Debtor requests that the

Court grant the relief requested herein and enter an order authorizing them to pay the Employee

Obligations, consistent with its compensation, vacation, and other benefit policies and plans, and

to permit, but not require, the Debtor, in its discretion, to maintain and continue the Employee

Plans and Programs for their Employees as those practices, programs, policies, and plans were in

effect as of the Petition Date, as such may be modified, terminated, amended, or supplemented

from time to time hereafter.

> **E.      Payment is Appropriate Under Bankruptcy Code Section 105(a) and the Doctrine of Necessity**

59.      Courts have also authorized payment of prepetition claims in appropriate

circumstances pursuant to Bankruptcy Code section 105(a). Section 105(a), which codifies the

inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of

this title." 11 U.S.C. § 105(a). Under Bankruptcy Code section 105(a), courts may permit pre-

plan payments of prepetition obligations when such payments are essential to the continued

operation of the debtor's business and, in particular, where nonpayment of a prepetition

obligation would trigger a withholding of goods or services essential to the debtor's business

reorganization plan. *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105

empowers bankruptcy courts to authorize payment of prepetition debt when such payment is

needed to facilitate the rehabilitation of the debtor).

60.      Numerous courts have used their section 105(a) powers under the "doctrine of

necessity" to authorize payment of prepetition obligations where, as here, such payment is an

essential element of the preservation of the debtor in possession's potential for rehabilitation. *See*

*In re CoServ,* 273 B.R. at 497 (reasoning that because the debtor-in-possession has fiduciary

duties it must meet, it is logical that the bankruptcy court may "use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate"); *In re Synteen Techs., Inc.*, No. 00-02203-W, 2000 WL 33709667, at *2 (Bankr. D.S.C. Apr. 14, 2000) (courts have permission to "allow payment of a prepetition claim when essential to the continued operation of the debtor") (citation omitted); *In re Just For Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("[C]ourts have used their equitable power under section 105(a) . . . to authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization."); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105] the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("payment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.").

61.     The "doctrine of necessity" is frequently invoked early in reorganization cases, during the so-called "breathing spell," when preservation of the estate is most critical and often extremely difficult. *See* 2 Collier on Bankruptcy ¶ 105.02[4][a] (16th ed.) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately). For example, in *In re Structurlite Plastics Corp.*, the court embraced "the principle that a bankruptcy court may exercise its equity powers under section

105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor.'" *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987)). The court explained that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932. Flexibility of payment is particularly critical when the prepetition creditor provides vital goods or services to the debtor.

62.     Here, many of the Employees rely on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses and maintain their health and well-being. Consequently, these Employees will be exposed to significant financial hardships if the Debtor is not permitted to honor the Employee Obligations. If the Debtor is unable to satisfy such obligations, Employee morale and loyalty will suffer at a time when Employee support is critical. Further, if the Court does not authorize the Debtor to honor its various obligations under the Employee Benefits Plans, the Employees' health coverage could be threatened, potentially burdening individual Employees with the costs of health care. At a minimum, the loss of health care coverage, or uncertainty regarding coverage, would result in considerable anxiety for the Employees at a time when the Debtor need its Employees to perform their jobs at peak efficiency. For all of the foregoing reasons, a sound business purpose exists to pay the Employee Obligations.

63.     In the absence of such payments, the Debtor believes that its Employees may seek alternative employment opportunities, perhaps with the Debtor's competitors. Such a development would deplete the Workforce, hinder the Debtor's ability to service its customers, and likely diminish creditor and counterparty confidence in the Debtor. Moreover, the loss of

valuable Employees and the recruiting efforts that would be required to replace such Employees would be a substantial and costly distraction at a time when the Debtor must focus on sustaining their operations. Accordingly, the Debtor must be able to pursue all reasonable measures to retain the Employees by, among other things, continuing to honor wages, benefits, and related obligations, including those that accrued prior to the Petition Date, consistent with the terms set forth in the Interim Order attached hereto and any final order entered.

64.     Taken together, the nature of the Employee Obligations, the substantial harm to the Debtor's business that would be caused if those obligations were not honored, the related potential for loss of value in the Debtor's estate, and the fact that a significant portion of the obligations in question relates to priority wage claims, lead to the conclusion that the Employee Obligations fall well within the scope of obligations whose payments may be authorized pursuant to the doctrine of necessity.

65.     The relief requested herein is commonly granted by Bankruptcy Courts in this District. *See, e.g.*, *In re 4 West Holdings, Inc.*, Case No. 18-30777 (HDH) (Bankr. N.D. Tex. Apr. 18, 2018) [Docket No. 257] (entering final order authorizing debtors to pay prepetition wages and other benefits); *In re ADPT DFW Holdings LLC*, Case No. 17-31432 (SGJ) (Bankr. N.D. Tex. May 19, 2017) [Docket No. 207] (same); *In re Reddy Ice Holdings, Inc.*, Case No. 12- 32349 (Bankr. N.D. Tex. Apr. 17, 2012) [Docket No. 93]. Accordingly, for all of the foregoing reasons, the relief requested herein will benefit the Debtor's estate and creditors by allowing the Debtor's business operations to continue without interruption and should therefore be approved.

> **F.      The Court Should Authorize Applicable Banks and Other Processors to Honor Checks and Electronic Fund Transfers in Accordance with the <u>Motion</u>**

66.     In connection with the foregoing, the Debtor respectfully requests that the Court

(a) authorize all applicable Processors to receive, process, honor, and pay all checks and transfers

issued by the Debtor in accordance with this Motion, without regard to whether any checks or

transfers were issued before or after the Petition Date; (b) provide that all Processors may rely on

the representations of the Debtor with respect to whether any check or transfer issued or made by

the Debtor before the Petition Date should be honored pursuant to this Motion (such Banks and

other Processors having no liability to any party for relying on such representations by the

Debtor provided for herein); and (c) authorize the Debtor to issue replacement checks or

transfers to the extent any checks or transfers that are issued and authorized to be paid in

accordance with this Motion are dishonored or rejected by the Processors.

### G.     <u>Immediate Relief is Justified</u>

67.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one

days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an

obligation regarding property of the estate" only if such relief is necessary to avoid immediate

and irreparable harm. Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where

the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future

as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y.

1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy

Rule 4001).

68.     Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief

requested herein to avoid harm to the Debtor's customers and other third parties. Unlike

Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or

threatened harm to the estate alone. Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally. *Cf.* Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate"). Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions. *See* 9 Collier on Bankruptcy ¶ 4001.07[b][3] (discussing source of "irreparable harm" standard under Rule 4001(c)(2)). Courts will routinely consider third-party interests when granting such relief. *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001).  Though the Fifth Circuit has not interpreted the phrase "immediate and irreparable harm" with regard to Bankruptcy Rule 6003, is has with regard to preliminary injunctions. *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). In that context, Courts have found that this standard requires "(1) the harm to Plaintiffs is  imminent the injury would be irreparable and (3) that Plaintiffs have no other adequate legal remedy." *Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006).

69.     As described herein and at the hearing on connection with this Motion, the Debtor will suffer immediate and irreparable harm without Court authorization to pay the Employee Obligations and other related relief requested herein. Accordingly, Bankruptcy Rule 6003 has been satisfied, and the relief requested herein should be granted.

## **WAIVER OF BANKRUPTCY RULES**

70.     To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen day stay under Bankruptcy Rule 6004(h), to the extent applicable. *See* Fed. R. Bankr. P. 6004(a), (h). As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be

able to continue to operate its business and preserve the value of its estate. The Debtor respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **RESERVATION OF RIGHTS**

71.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. The Debtor expressly reserves its rights to dispute any claim asserted by a member of the Workforce under applicable law and to assume or reject any Workforce agreements in accordance with the applicable provisions of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## **CONSENT TO JURISDICTION**

72.     The Debtor consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## **NOTICE**

73.     Notice of this Motion shall be provided to: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the holders of the 20 largest unsecured claims against the Debtor; (iii) the United States Attorney's Office for the Northern District of Texas; (iv) the Debtor's prepetition lender, First National Bank of Granbury, (v) the Internal Revenue

Service; (vi) state environmental agencies for states in which the Debtor conducts business; (vii) the state attorneys general for states in which the Debtor conducts business; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

74.        The Debtor respectfully submits that such notice is sufficient and that no further notice of this Motion is required.

## NO PRIOR REQUEST

75.        No previous request for the relief sought herein has been made to this Court or any other Court.

**WHEREFORE**, for the reasons stated herein, the Debtor respectfully requests that the Court enter the Proposed Interim Order substantially in the form attached hereto as Exhibit A, granting the relief requested in this Motion, and granting such other relief as the Court deems just and proper.

Dated: March 1, 2024

Respectfully submitted,

**DORSEY & WHITNEY LLP,**

By:   */s/ H. Joseph Acosta*
     H. Joseph Acosta
     SBN 24006731
     200 Crescent Court, Suite 1600
     Dallas, Texas 75201
     Tel: 214-981-9970
     Fax: 214-853-5887
     acosta.joseph@dorsey.com

     *Proposed Counsel for the Debtor*
     *and Debtor in Possession*

## Certificate of Service

I certify that on March 1, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas, email to the United States Trustee and U.S. First class mail on the parties in the attached Service List.

*/s/ H. Joseph Acosta*
H. Joseph Acosta

**SERVICE LIST**

Blue Cross Blue Shield
1001 E. Lookout Drive
Richardson, TX 75082

Caterpillar Credit Card
P.O. Box 735838 Dallas,
TX 75373

Cokinos Young
1221 Lamar Street 16th
Floor
Houston, TX 77010

Fidelity Investments
131 S. Dearborn
6th Floor
Chicago, IL 60603

First National Bank of
Granbury
P.O. Box 400 Fort
Worth, TX 76102

Flora Surveying
Associates 12863 George
Washington Memorial
Highway
Glenns, VA 23149

Frontier Tank Lines,
Inc.
6850 TPC Drive
Suite 200
McKinney, TX 75070

Fuelman
PO Box 1239 Covington,
LA 70434

Holt Cat
P.O. Box 207916
San Antonio, TX 78220

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

IPFS Corporation
P.O. Box 412086
Kansas City, MO 64141

JTC Heavy Haul, LLC
9611 CR 528
Burleson, TX 76028

KSM Exchange LLC
P.O. Box 270360
Oklahoma City, OK 73137

Niece Equipment LP
PO Box 277
Buda, TX 78610

Office of the United States
Attorney
3rd Floor, 1100 Commerce
Street Dallas, TX 75242

Office of the United States
Trustee
1100 Commerce Street, Room
976 Dallas, TX 75242-1699

Pfeil Holding Corp.
7800 Dallas Parkway
Suite 310
Plano, TX 75024

ROMCO Equiment Co.
P.O. Box 736957
Dallas, TX 75373-6957

Southern Tire Mart
800 Highway 989
Columbia, MS 39429

Spooner Construction
Services LLC
309 Byers Street #100
Euless, TX 76039

Stuart Hose & Pipe Company
701 Riverside Drive
Fort Worth, TX 76111

Texas Attorney General's
Office
Attn: Bankruptcy-
Collections Division
P.O. Box 12548
Austin, TX 78711

Texas Department of
Transportation
P.O. Box 149001
Austin, TX 78714

TKO Equipment
P.O. Box 153389
Irving, TX 75015

TX Commission of
Environmental Quality
P.O. Box 13087
Austin, TX 78711

## EXHIBIT A

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 24-40747** |
| **ROBERT WYATT CONTRACTING, LLC,**[2] | § | |
| | § | **CHAPTER 11 CASE** |
| | § | |
| Debtor. | § | |
| | § | |

**INTERIM ORDER AUTHORIZING PAYMENT OF (I) CERTAIN PREPETITION WORKFORCE CLAIMS, INCLUDING WAGES, SALARIES, AND OTHER COMPENSATION, (II) CERTAIN EMPLOYEE BENEFITS, (III) REIMBURSEMENT TO EMPLOYEES FOR PREPETITION EXPENSES, (IV) WITHHOLDING AND PAYROLL RELATED TAXES AND (V) WORKER'S COMPENSATION OBLIGATIONS**

Upon the motion (the "**Motion**")[2][3] of the Debtor for entry of an interim order (this "**Interim Order**") authorizing payment of (i) certain prepetition Workforce claims, including other compensation, (ii) certain employee benefits and confirming right to continue employee benefits on postpetition basis, (iii) reimbursement to employees for expenses incurred

---

[2]     The Debtor's federal identification number is:  82-1413471.

[3]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

prepetition, (iv) withholding and payroll-related taxes, and (v) workers' compensation obligations; the Court having reviewed the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. 157 and §§ 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtor consents to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtor is authorized, but not directed to (i) pay prepetition claims and honor obligations incurred or related to the Employee Obligations, in an aggregate amount not to exceed $50,000.00 (exclusive of Withholding Obligations), and (ii) maintain, continue, and honor, in the ordinary course of business, the Employee Plans and Programs.

3.      The Debtor is authorized, but not directed, to continue the programs and policies described in the Motion on a postpetition basis and to alter, modify or discontinue such programs and policies as they deem necessary or appropriate in the ordinary course of business, without further notice to or order of the Court.

4.      Except as otherwise set forth herein, the Debtor is authorized, pursuant to Bankruptcy Code sections 105(a) and 363(b), but not obligated or directed, in the reasonable

exercise of their business judgment and in the ordinary course of business, to pay and honor amounts on account of Employee Compensation Obligations (exclusive of Withholding Obligations); *provided, however,* that without prejudice to the Debtor's right to seek additional payments at the Final Hearing (as defined below) or any other time subsequent thereto, the Debtor shall not make any payments in excess of $15,150 on account of prepetition Employee Compensation Obligations to any one Employee, respectively, absent further order of the Court.

5.      The Debtor and any applicable third parties are authorized to continue to allocate and distribute Withholding Obligations to the appropriate third-party recipients or taxing authorities in accordance with the Debtor's stated policies and prepetition practices.

6.      The Debtor is authorized, but not directed, to continue to honor their Reimbursable Expense Obligations including any prepetition obligations, and to continue in accordance with the Debtor's policies and prepetition practices; *provided, however,* that satisfaction of prepetition Reimbursable Expense Obligations shall only be allowed to the extent Employees have paid for such expenses directly from their own funds or are otherwise personally liable for such expenses.

7.      The Debtor is authorized, but not directed, to pay all processing and administrative fees associated with and all costs and expenses incidental to payment of the Compensation Obligations or the Employee Health Obligations, including the Administrative Fee Obligations.

8.      Nothing in the Motion or this Interim Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as an admission as to the validity or priority of any claim against the Debtor, an approval or assumption of any agreement, contract or lease pursuant to Bankruptcy Code section 365, or a waiver of the right of the Debtor, or shall

impair the ability of the Debtor, or any other party in interest, to the extent applicable, to contest the validity and amount of any payment made pursuant to this Interim Order.

9.      Each of the Processors are authorized to receive, process, honor, and pay all checks and transfers issued or requested by the Debtor, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Interim Order and any other order of this Court.

10.     The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Employee Obligations that are dishonored or rejected.

11.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

12.     Nothing in the Motion or this Interim Order shall be construed to authorize any severance payments to insiders in excess of the limits set forth in Bankruptcy Code section 503(c)(2).

13.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

14.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

15.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

16.     The final hearing (the "**Final Hearing**") to consider the entry of a final order granting the relief requested in the Motion shall be held on __, 2024, at : _.m. prevailing Central Time.

17.     Any objection to the entry of a final order granting the relief requested in the Motion shall be filed with the Court and served on, no later than seven (7) days prior to the

commencement of the final hearing: (a) Dorsey & Whitney LLP, 200 Crescent Court, Suite 1600, Dallas, TX 75201 (Attn: H. Joseph Acosta), (b) the Office of the United States for the Northern District of Texas, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, TX 75242; (c) the creditors listed on the Debtor's List of Top 20 Unsecured Creditors, (d) any committee of unsecured creditors appointed in this case; and (d) the Debtor's prepetition secured lender, First National Bank of Granbury.

18.     This Court shall retain jurisdiction over any and all matters arising from the interpretation, implementation, or enforcement of this Interim Order.

**# # # End of Order # # #**